UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MARK ZOLL, | ) | No. 10 B 2748 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

### AMENDED MEMORANDUM OPINION

This case presents a situation that is thankfully rare: a trustee's sale of the same estate property to two different buyers. Before the court for ruling are competing motions to vacate the orders authorizing the two sales – one from parties who relied on the first sale, the other from the buyer in the second sale. For the reasons discussed below, both motions will be denied.

### 1. Background

The following facts are taken from the parties' papers and the court's docket. No facts are in dispute.

Mark Zoll owned a 100% membership interest in 102 Washington LLC ("102 Washington"). The primary asset of 102 Washington is real property, improved with a building of some kind, at 102 Washington Street, Waukegan, Illinois. In January 2010, Zoll filed a chapter 7 bankruptcy case, and John Gierum was appointed trustee. Six months later, in June 2010, Gierum filed a motion pursuant to section 363(b) of the Bankruptcy Code seeking permission to sell the estate's interest in 102 Washington to a John Thomas for $15,000. (Dkt. No. 55). Thomas was apparently affiliated in some fashion with an entity called Restructure Capital, LLC. No party in interest objected, and on July 23, 2010, the court granted the motion. The order ("the 2010 sale order") was entered on the docket on July 27, 2010. (Dkt. No. 71).

Sometime after the entry of the 2010 sale order, Thomas tendered to Gierum a check from Restructure Capital for $15,000. On September 7, 2010, Gierum executed an assignment in which he assigned to Restructure Capital the estate's interest in 102 Washington.[1]

Restructure Capital and others took actions in reliance on the completed sale. In September 2010, Restructure made amendments to the operating agreement of 102 Washington. On November 19, 2010, two entities known as T6 Unison Site Management, LLC and Unison Site Management II, LLC (collectively, "Unison") acquired from 102 Washington the right to use the rooftop and other portions of the building for the transmission and reception of wireless communication signals. Unison paid 102 Washington $950,000 in cash and lent it another $250,000 secured by a mortgage on the property. There were apparently other transactions undertaken in reliance on the sale, including one involving some people named Glazer and an entity called BCL-Waukegan, LLC. The precise nature of these other transactions is unclear and the parties disagree about their significance, but the details are immaterial.

What is material is that Gierum never received the $15,000 in payment for the estate's interest in 102 Washington. Restructure Capital's check to Gierum was returned for insufficient funds, and no replacement check was ever provided.

Six months passed. Believing the NSF check meant the estate still had an interest in 102 Washington, Gierum then filed a second motion on April 29, 2011, seeking permission to sell the

---

[1]   The assignment was to Restructure Capital although the 2010 sale order authorized a sale to Thomas, specifically to "John Thomas of [R]estructure [C]apital, LLC." (Dkt. No. 71). But the parties have made nothing of this and have treated the sale order as authorizing a sale to Restructure Capital, not to Thomas. Accordingly, the court will do the same. *Cf. Brown v. Job (In re Polo Builders, Inc.)*, 433 B.R. 700, 705 n.4 (Bankr. N.D. Ill. 2010) (treating the debtor corporation as the owner of real property where all parties chose to do so in their papers although the wife of the debtor's principal was actually the owner).

estate's asserted interest to an entity called Aleph Point, LLC ("Aleph Point") for $15,000. (Dkt. No. 102). The motion mentioned the earlier sale but explained that "the purchaser's payment bounced." (*Id.* at 2). No party in interest objected, and on May 13, 2011, the court granted the motion. The order ("the 2011 sale order") was entered on the docket on May 17, 2011. (Dkt. No. 106).[2]

At some point after the 2011 sale order was entered, Aleph Point tendered to Gierum a cashier's check for $15,000. According to Gierum, he provided Aleph Point with a written assignment of the estate's interest in 102 Washington.

Apparently prompted by the assignment to Aleph Point, on May 27, 2011, Unison moved under Bankruptcy Rule 9023, or alternatively under Rule 9024, to vacate the 2011 sale order. Apparently prompted by Unison's motion, on June 23, 2011, Aleph Point counterpunched, moving under Rule 9024 to vacate the 2010 sale order. Both motions are fully briefed.

In addition to Unison and Aleph Point, several other parties have weighed in on the question of vacatur. Restructure Capital and BCL-Waukegan have submitted a memorandum supporting the Unison motion, as have Thomas and the Glazers. Gierum, too, supports Unison's motion. He notes in his memorandum that Thomas and Restructure Capital have said they will pay the unpaid $15,000, and he offers to return Aleph Point's money.

## 2. Discussion

Both Unison's motion and Aleph Point's motion will be denied. No adequate reason has been given to vacate either sale order under the applicable bankruptcy rules. The parties to the

---

[2] The 2011 sale order entered was an incorrect one from a different sale in the Zoll case, but on September 11, 2011, an amended order properly reflecting the sale to Aleph Point was entered. (Dkt. No. 141).

sales – Gierum, Restructure, and Aleph Point – will instead be left to their remedies under state law. Illinois contract law, not bankruptcy law, determines who owns 102 Washington.

### a. The Contractual Analysis

First, the contractual analysis. There are two contracts for the sale of 102 Washington at issue. The first was between Gierum and Restructure Capital. At some point either before or after the 2010 sale order was entered (the record is unclear), Gierum and Restructure Capital entered into what appears to have been an oral contract under which Gierum agreed to assign to Restructure Capital the estate's interest in 102 Washington in exchange for $15,000. Gierum executed a written assignment to Restructure Capital, and Thomas tendered to Gierum Restructure Capital's check.

An assignment is a transfer of an identifiable property, right, or claim from the assignor to the assignee. *Toepper v. Brookwood Country Club Rd. Ass'n*, 204 Ill. App. 3d 479, 489, 561 N.E.2d 1281, 1287 (2d Dist. 1990). Under Illinois law, an assignment must meet the same requirements as other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration. *Cincinnati Ins. Co. v. American Hardware Mfrs. Ass'n*, 387 Ill. App. 3d 85, 100, 898 N.E.2d 216, 230 (1st Dist. 2008); *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387, 818 N.E.2d 753, 761 (1st Dist. 2004). An assignment need not take any particular form as long as it adequately evidences the intent of the assignor to vest ownership of the subject matter in the assignee and describes the subject matter with sufficient particularity. *Cincinnati Ins. Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230.

Gierum's assignment to Restructure Capital met all of the requirements for an enforceable contract. It evidenced Gierum's intent to assign to Restructure Capital the interest in

102 Washington and described that interest with sufficient particularity. Both Gierum and Restructure Capital assented to the assignment. The subject matter was legal: there is no prohibition on the transfer of interests in an LLC. And there was consideration in the form of a $15,000 payment. No party contends the assignment to Restructure Capital was invalid.

The effect of a valid assignment is to transfer to the assignee all interest the assignor has in the subject matter. *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 779, 935 N.E.2d 949, 955 (1st Dist. 2009); *Northwest Diversified*, 353 Ill. App. 3d at 387, 818 N.E.2d at 761; *Toepper*, 204 Ill. App. 3d at 489, 561 N.E.2d at 1287 (noting that "[a]n assignment operates to transfer to the assignee all of the assignor's right, title, and interest in whatever is assigned"). The assignment Gierum executed accordingly transferred ownership of the estate's interest in 102 Washington to Restructure Capital. Upon the assignment's execution, Restructure Capital, not the bankruptcy estate, owned 102 Washington.[3/]

Although Gierum performed his obligations under the contract, however – assigning the interest in 102 Washington to Restructure Capital – Restructure Capital failed to perform its obligations. It failed to pay the $15,000 because the check tendered on its behalf bounced and was never replaced. Restructure Capital's failure to pay the purchase price was a breach of the contract. *See Ercor Corp. v. Northern Bldg. Co.*, No. 09 C 3320, 2010 WL 1729482, at *3 (N.D. Ill. Apr. 27, 2010); *Indeck Energy Servs., Inc. v. NRG Energy, Inc.*, No. 03 C 2265, 2004 WL

---

[3/]   Ordinarily, the assignment of a membership interest in an LLC transfers only financial rights. Management rights cannot be transferred without the consent of the non-transferring members. 1 Larry E. Ribstein & Robert R. Keatinge, *Ribstein & Keatinge on Limited Liability Companies* § 7:4 at 301 (2011). In this case, however, there were no other members; 102 Washington was a single-member LLC in which Zoll held a 100% interest. The estate therefore acquired both financial and management rights on the petition date, and Gierum could assign those rights to Restructure Capital. *See In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003) (applying Colorado law).

2095554, at *9 (N.D. Ill. Sept. 16, 2004); *see also REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 698 (7th Cir. 2008) (discussing Minnesota law).

Upon Restructure Capital's breach, Gierum was entitled to elect his remedy. *See MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 18, 845 N.E.2d 22, 33 (1st Dist. 2006); *Newton v. Aitken*, 260 Ill. App. 3d 717, 720, 633 N.E.2d 213, 216-17 (2d Dist. 1994). He could have affirmed the contract, sued Restructure Capital, and sought damages. *See MC Baldwin*, 364 Ill. App. 3d at 18, 845 N.E.2d at 33; *Newton*, 260 Ill. App. 3d at 720, 633 N.E.2d at 216-17; *see also Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006) (noting that "[t]he normal remedy for breach of contract is an award of damages"). Or, since Illinois permits rescission for substantial breach, *see Horwitz v. Sonnenschein, Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973-74, 926 N.E.2d 934, 942 (1st Dist. 2010), he could have disaffirmed the contract, sued Restructure Capital, and sought rescission of the contract and restitution of the interest assigned, *see MC Baldwin*, 364 Ill. App. 3d at 18, 845 N.E.2d at 33; *Newton*, 260 Ill. App. 3d at 719-20, 633 N.E.2d at 216-17; *see, e.g., TMF Tool Co. v. Siebengartner*, 899 F.2d 584, 587 (7th Cir. 1990) (holding that the failure to pay for transferred shares of stock gave rise to a claim for rescission of the sale).

Gierum's election to sue for damages would have left the interest in 102 Washington in Restructure Capital's hands and potentially compensated the estate monetarily. Gierum's election to sue for rescission and restitution would potentially have permitted Gierum to reacquire the interest for the estate. As it happened, though, Gierum did neither. He did not sue Restructure Capital for damages. He did not sue Restructure Capital for rescission and restitution. He did not sue Restructure Capital at all. The interest in 102 Washington having

been validly assigned to Restructure Capital, the result of Gierum's inaction was that the interest continued to belong to Restructure Capital, its breach of contract notwithstanding.

But Gierum appears to have thought differently. Gierum evidently believed that Restructure Capital's breach restored the interest in 102 Washington to the estate, giving him an opportunity to sell the interest again, this time to someone who would actually pay for it. Gierum therefore entered into what appears to have been an oral contract to sell the interest to Aleph Point for $15,000. Aleph Point paid Gierum $15,000, and some time thereafter Gierum executed a written assignment of the interest to Aleph Point.

Assuming the assignment to Aleph Point resembled the assignment to Restructure Capital (a fair assumption, although the Aleph Point assignment is not in the record), it met all of the requirements for an enforceable contract just as the Restructure Capital assignment did. It evidenced Gierum's intent to assign to Aleph Point the interest in 102 Washington and described that interest adequately. Both Gierum and Aleph Point assented to the assignment. The subject matter was legal. And there was consideration in the form of a $15,000 payment. No party contends the assignment to Aleph Point was invalid as a matter of contract law.

The problem with the Aleph Point transaction is that an assignment is void unless the assignor actually has, or at least potentially has, the subject matter of the assignment. *Cincinnati Ins. Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230; *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 350, 736 N.E.2d 145, 155 (1st Dist. 2000). An assignee can acquire no greater right or interest than the right or interest of the assignor. *Apollo Real Estate*, 398 Ill. App. 3d at 779, 935 N.E.2d at 955; *Cincinnati Ins. Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230. Gierum no longer had an interest in 102 Washington to assign because he had assigned it to Restructure

Capital. Gierum could not assign the interest to Aleph Point. *Cf. Owens*, 316 Ill. App. 3d at 350, 736 N.E.2d at 155 (holding an assignment ineffective where a separate agreement binding the assignor prohibited the assignment). The assignment to Aleph Point was void.[4/]

The void assignment meant the contract for the sale of the interest was breached. Although Aleph Point performed its obligations under the contract, paying Gierum $15,000, Gierum did not perform his: he failed to assign the interest in 102 Washington to Aleph Point because he had no interest to assign. That failure was a breach, *see Pacini v. Regopoulos*, 281 Ill. App. 3d 274, 279, 665 N.E.2d 493, 279 (1st Dist. 1996) (noting that a "[f]ailure to perform any term of a contract" is a breach); *see, e.g., In re Kiki, Ltd.*, 35 B.R. 175, 177 (Bankr. D. Haw. 1983) (failure to deliver shares of stock pursuant to settlement agreement was a material breach), for which the estate can be held liable in damages, *see Barton v. De Wolf*, 108 Ill. 195, 198 (1883); *Farson v. Buder*, 187 Ill. App. 318, 323-24 (1st Dist. 1914); 12A William Mead Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5631 at 449-50 (2009 rev.)

Under Illinois contract law, then, Restructure Capital owns 102 Washington – at least for now. Gierum has a cause of action against Restructure Capital on behalf of the estate arising out of Restructure Capital's breach of contract and can seek either damages or rescission and restitution of the interest. Aleph Point likewise has a cause of action for damages against Gierum (as estate representative) for breach of contract.

---

[4/]  Although Gierum potentially had the interest in 102 Washington – if he succeeded in an action against Restructure Capital for rescission and restitution – that potential interest was not what he contracted to sell to Aleph Point. Assignments are a matter of intent. *Cincinnati Ins. Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230; *Strosberg v. Brauvin Realty Servs., Inc.*, 295 Ill. App. 3d 17, 30, 691 N.E.2d 834, 843 (1st Dist. 1998); *Toepper*, 204 Ill. App. 3d at 489, 561 N.E.2d at 1288. It was not Gierum's intent to assign a cause of action for rescission and restitution of the interest. He contracted to sell the interest itself.

### b. The Post-Judgment Motions

Rather than treat the ownership question as one of state contract law, the parties choose to address it in the bankruptcy court using the bankruptcy rules to attack the sale orders. Aleph Point asks the court to vacate the 2010 sale order pursuant to Rule 9024; Unison asks the court to vacate the 2011 sale order pursuant to Rule 9023 or alternatively Rule 9024. Vacating one sale order or the other would indeed undo the sale. *See In re Donohue*, 410 B.R. 311, 317 (Bankr. D. Kan. 2009); *Nanak Resorts, Inc. v. Haskins Gas Serv., Inc. (In re Rome Family Corp.)*, 407 B.R. 65, 81 n.17 (Bankr. D. Vt. 2009). Neither buyer here, however, has made a case for vacating the sale order favoring the other buyer.

### i. Sale Orders and Their Vacatur

Section 363(b)(1) of the Bankruptcy Code permits the trustee, after notice and a hearing, to "use, sell, or lease" property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1). A sale is permissible as long as the trustee has an "'articulated business justification.'" *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *see also In re UAL Corp.*, 443 F.3d 565, 571 (7th Cir. 2006) (stating that transaction must "make[ ] good business sense" and "the creditors as a whole should benefit"); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) (sale must be "in the best interest of the estate"). Adequate notice to all creditors is necessary, and a hearing must be held, *Schipper*, 933 F.2d at 515 – except that no hearing is required if, after notice, no party in interest objects, *Telesphere*, 154 B.R. at 552. Approval of a sale rests with the bankruptcy court's discretion. *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004); *In re Irvin*, 950 F.2d 1318, 1320 (7th Cir. 1991).

An order authorizing a sale is a final judgment "good as against the world." *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 899 (8th Cir. 2007) (internal quotation omitted); *see also Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003). As a consequence, a sale order can be vacated only under the bankruptcy rules applicable to the vacatur of final judgments: Rules 9023 and 9024, which incorporate Rules 59 and 60 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 59, 60. *See In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992); *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 908-09 (7th Cir. 1990); *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012, 1018 (7th Cir. 1988). Because of the "strong policy" favoring the finality of bankruptcy sales, *Edwards*, 962 F.2d at 645; *Irvin*, 950 F.2d at 1320, sale orders are vacated "'*only in very limited circumstances*,'" *Irvin*, 950 F.2d at 1320 (quoting *In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir. 1985)).

### ii. The Unison Motion

Unison moves under Rule 59(e), or alternatively under Rule 60(b), to vacate the 2011 sale order authorizing the sale to Aleph Point. Although Unison cites both rules, its motion is one under Rule 59(e). Unison filed the motion within 14 days of the entry of the 2011 sale order, and the nature of a post-judgment motion filed within the 14-day period depends on its substance, not on how it is labeled. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Because Unison's motion challenges the 2011 sale order on grounds permitted under Rule 59(e), the motion is properly analyzed under that rule.

Rule 59(e) allows a court to vacate a judgment based on a manifest error of law or fact or on newly discovered evidence. *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011); *Heyde v. Pittenger*, 633 F.3d 512, 521 (7th Cir. 2011). Relief under Rule 59(e) is considered an

extraordinary remedy reserved for exceptional cases, *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008), and the movant must therefore "'clearly establish'" one of the three grounds, *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)). The decision to grant a Rule 59(e) motion is discretionary with the trial court. *See Boyd*, 656 F.3d at 492; *Heyde*, 633 F.3d at 521.

Unison bases its motion on what it claims to be "new evidence" that was "not available to the Court" on May 13, 2011. (Unison Mot. at 3). When Gierum's motion to approve the sale to Aleph Point was presented, Union notes, the court was unaware that Gierum had already assigned the interest to Restructure Capital. (*Id.*). Unison also notes that when the motion was presented it had already "act[ed] to its detriment" in entering into the $1.2 million transaction with 102 Washington that gave Unison access to the roof of the building. (*Id.*).

The difficulty for Unison is that Rule 59(e) permits a judgment to be vacated for "*newly discovered* evidence," *Boyd*, 656 F.3d at 492 (emphasis added); *see also Heyde*, 633 F.3d at 521; *Abacarian v. McDonald*, 617 F.3d 931, 943 (7th Cir. 2010), not "new evidence." And the question is not whether the evidence was "available to the court" but whether it was available to the movant. To support a motion based on newly discovered evidence, the movant must show not only that the evidence "was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence." *Caisse National de Credit Agricole v. CBI Indus, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation omitted); *see also Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002) (defining newly discovered evidence as "factual information that comes to light only after the judgment, and could not have been learned earlier"); *Bell v. Eastman Kodak, Co.*, 214 F.3d 798,

801 (7th Cir. 2000).[5/]

The evidence Unison cites is neither new nor newly discovered. As far as the record shows, the information about the assignment to Restructure Capital and about the Unison transaction that took place in reliance on it was available and known to Unison well before the motion that resulted in the 2011 sale order was even presented. *See* 11 Wright, Miller & Kane, *supra*, § 2859 at 302-03 (evidence in possession of a party before the judgment is rendered "is not newly discovered and does not entitle the party to relief"). None of these matters was raised when the motion was presented, no objection to the sale was asserted, and the motion was granted – properly so.

True, Unison was not given notice of the sale motion and so did not have an opportunity to bring these matters to the court's attention. But Unison was not given notice because it was not entitled to any. In a chapter 7 case, the only parties entitled to notice of a trustee's motion to sell property of the estate are the debtor, the U.S. Trustee, all creditors, and all indenture trustees. Fed. R. Bankr. P. 6004(a), 2002(a)(2), 2002(k). Unison is none of these and is in no position to complain about the entry of the 2011 sale order.[6/]

---

[5/]    *Gleash* and *Bell* are decisions under Rule 60(b), but the same standard applies to motions based on newly discovered evidence whether brought under Rule 60(b) or Rule 59(e). *See Gilmore v. Pollard*, No. 08-C-143, 2008 WL 4560649, at *1 (E.D. Wis. Oct. 8, 2008); *Northern Ind. Gun & Outdoor Shows, Inc. v. Hedman*, 111 F. Supp. 2d 1020, 1026 (N.D. Ind. 2000); 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2859 at 302 (2d ed. 1995).

[6/]    Given that Unison had no right to be notified of the motion, it is doubtful whether Unison, a complete stranger to the bankruptcy case, would have had standing to object. Non-creditors, such as unsuccessful bidders, typically lack standing to contest a sale, *see Gulf States Steel, Inc. of Ala.*, 285 B.R. 739, 742 (Bankr. N.D. Ala. 2002), even if the sale might have some indirect effect on them, *see In re LeBlanc, Inc.*, 299 B.R. 546, 550-51 (Bankr. N.D. Iowa 2003) (holding that tenant lacked standing to contest sale of property). For the same reason, it is doubtful that Unison has standing to ask to have the 2011 sale order vacated under Rule 59(e).

Even if Unison had made a case for vacatur under Rule 59(e), there would be good reasons to deny the motion. In reliance on the 2011 sale order, Aleph Point entered into a contract with Gierum and paid him $15,000 for the estate's interest in 102 Washington. Gierum breached the contract, giving Aleph Point remedies under state law. Vacating the 2011 sale order would undo the sale, *see Donohue*, 410 B.R. at 317, and would arguably deprive Aleph Point of its state law remedies. Not only would that be unfair, it would be unnecessary. Unison wants the 2011 sale order vacated in order to uphold its easement transaction by supposedly restoring to Restructure Capital its interest in 102 Washington. But under Illinois law, Restructure Capital is *currently* the owner of the interest – at least until Gierum files and prevails in an action for rescission and restitution. Vacating the 2011 sale order would not help Unison and would only harm Aleph Point.

Unison's motion to vacate the 2011 sale order will be denied.

### iii. The Aleph Point Motion

Aleph Point, meanwhile, moves under Rule 60(b) to vacate the 2010 sale order. Rule 60(b) allows the court to relieve a party from a final judgment for six reasons. The first five are specific: mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; voidness of the judgment; and satisfaction, release, or discharge of the judgment. Fed. R. Civ. P. 60(b)(1)-(5). The sixth is a catch-all, allowing the court to act for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Like relief under Rule 59(e), relief under Rule 60(b) is an extraordinary remedy to be granted only in exceptional cases. *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 494 (7th Cir. 2011). The decision to grant a Rule

60(b) motion is equally discretionary. *Nelson*, 657 F.3d at 589; *Pakovich*, 653 F.3d at 493-94.

Aleph Point offers two reasons to vacate the 2010 sale order, but neither is sufficient. First, Aleph Point argues that the 2010 sale order should be vacated under Rule 60(b)(1) or (6) on "grounds of mistake."[7/] (Aleph Point Mot. at 9). The mistake apparently consisted of the failure of either Gierum or the court (Aleph Point fails to specify) to anticipate that after the 2010 sale order's entry, Restructure Capital would take the assignment of the interest in 102 Washington and then fail to pay for it. (*Id.*).

Rule 60(b)(1) does not provide relief for that kind of "mistake." The rule applies to mistakes by the court as well as mistakes by parties, *Williams v. U.S. D.E.A.*, 51 F.3d 732, 735 (7th Cir. 1995), but its application is limited. Rule 60(b)(1) provides relief based upon "mistake" in only two instances: (1) when a party has made an excusable litigation mistake or an attorney has acted without authority; or (2) when the court has made a mistake of fact in the final judgment or order. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000); *see also Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009) (stating that a "mistake" conceivably justifying relief usually involves an inadvertent "misunderstanding of the surrounding facts and circumstances").[8/]

---

[7/]   Motions under Rule 60(b) must be made within a reasonable time, and motions under Rules 60(b)(1), (2), and (3) must be made no more than a year after the entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). Aleph Point met the one-year deadline by a little over a month. No party has argued that Aleph Point's motion is barred because it was not brought within a reasonable time.

[8/]   The Tenth Circuit in *Yapp* said that Rule 60(b)(1) also permits relief based on a court's mistake of law. *See Yapp*, 186 F.3d at 1231. The Seventh Circuit disagrees, reasoning that a mistake of law should be addressed on appeal, not through a collateral attack on the judgment, *see Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017-18 (7th Cir. 2002); *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc.*, 127 F.3d 574, 577 (7th Cir. 1997).

The mistake Aleph Point claims Gierum or the court (or both) made was neither a litigation mistake nor a mistake of fact in the 2010 sale order. It was not a mistake of "fact" at all. It was a failure to predict the future. According to Aleph Point, the 2010 sale order should be vacated simply because Restructure Capital failed to pay Gierum and so in hindsight the sale to Restructure Capital was a bad idea. But Aleph Point cites no authority suggesting that Rule 60(b)(1) permits relief for poor prognostication, and the court's own research has disclosed none. In a slightly different context, courts have made clear that Rule 60(b)(1) is not available to a party who "fails to predict" the consequences of his actions. *Yapp*, 186 F.3d at 1231. "[O]nce the lesson is learned," these courts hold, it is too late to "turn back the clock to undo those mistakes." *Id.*; *see also Cacevic*, 226 F.3d at 491 (Rule 60(b)(1) does not provide relief for decisions that "subsequent events reveal . . . were unwise" (internal quotation omitted)); *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

Rule 60(b)(6) is no help to Aleph Point either. The provisions of Rule 60(b) are mutually exclusive, and Rule 60(b)(6) does not permit relief for an alleged "mistake"; that relief is available under Rule 60(b)(1) or not at all. *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006); *Berwick Grain Co. v. Illinois Dep't of Agric.*, 189 F.3d 556, 559 (7th Cir. 1999). Even if Rule 60(b)(6) did apply here, relief from a final judgment under the catch-all provision will be granted only when "extraordinary circumstances justify that step." *West v. Schneiter*, 485 F.3d 393, 395 (7th Cir. 2007); *Arrieta*, 461 F.3d at 865. This is a "stringent" standard, *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997), that Aleph Point has not come close to meeting. Aleph Point complains only about what happened after the 2010 sale order was entered and does not suggest that either Gierum or the court was mistaken about any facts on the

date of its entry.

As its second argument for vacating the 2010 sale order, Aleph Point claims "fraud" under Rule 60(b)(3). Rule 60(b)(3) permits relief for two kinds of fraud: fraud by an opposing party, and fraud on the court. *Oxxford Clothes*, 127 F.3d at 578. Fraud by an opposing party must be some form of fraud or misconduct that prevented the moving party from fully and fairly presenting his case. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758-59 (7th Cir. 2010); *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 536 (7th Cir. 2003). Fraud on the court is "defined narrowly," *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011), to involve "corruption of the judicial process itself," *Met-L-Wood*, 861 F.2d at 1018. Examples include "bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties . . . , such as tendering documents he knows to be forged or testimony he knows to be perjured." *Golf 255*, 652 F.3d at 809. Regardless of the type, fraud must be demonstrated by clear and convincing evidence. *Wickens*, 620 F.3d at 759.

Aleph Point has not demonstrated fraud of either kind. The fraud Aleph Point claims was allegedly committed by Restructure Capital (or by Thomas) and consisted of "defraud[ing] the Trustee out of the purchase price" and "defraud[ing] 102 Washington . . . out of its easement rights" by selling those rights to Unison. (Aleph Point Mot. at 9). Even assuming the truth of these allegations, neither fraudulent act prevented any party from presenting its case fully and fairly to the bankruptcy court in connection with the 2010 sale order or any other order. It certainly had no effect on Aleph Point's ability to present its case to the court: Aleph Point had nothing to do with the bankruptcy case until nearly a year after the 2010 order. As for fraud on

the court, neither alleged fraudulent act suggests any sort of corruption of the judicial process.[9]

Just as there are equitable reasons to deny Unison's motion, finally, there are equitable reasons to deny Aleph Point's motion. The 2010 sale order allowed Gierum to enter into a contract with Restructure Capital, and Gierum assigned his interest in 102 Washington to Restructure Capital. In reliance on that transaction and Restructure Capital's ownership of 102 Washington, Unison entered into a contract for a rooftop easement, paying 102 Washington $950,000 in cash and lending it another $250,000. But Restructure Capital breached the contract, and the breach gave Gierum remedies against Restructure Capital under state law. Vacating the 2010 sale order would undo the sale, *see Donohue*, 410 B.R. at 317, would jeopardize Unison's transaction with 102 Washington, and would arguably deprive Gierum of his state law remedies. Jeopardizing Unison's transaction and depriving Gierum of his contract rights would be as unfair as depriving Aleph Point of its own contract rights.

Aleph Point's motion to vacate the 2010 sale order will be denied.

### 3. Conclusion

Neither Unison nor Aleph Point has supplied a reason to vacate the sale orders here under

---

[9]    This case does not fit easily into a Rule 60(b) analysis, and the awkwardness of the analysis stems from Aleph Point's dubious standing to ask for the 2010 sale order to be vacated. Except where the court's mistakes are involved, Rule 60(b)(1) permits a party to get relief from its *own* mistakes. And except when fraud on the court is involved, Rule 60(b)(3) permits a party to get relief when an opponent's fraud has interfered with *that party's* ability to present its case. But Aleph Point made no mistakes, and no one interfered with its presentation of its case at the hearing that resulted in the 2010 sale order, because Aleph Point did not participate in the hearing. It had no right to participate. Aleph Point was a complete stranger to the bankruptcy case at that point and would have had no standing to object to Gierum's motion if it had wanted to. Because Aleph Point had no standing to object to the 2010 sale order, its standing to move for the order's vacatur is also highly doubtful – as doubtful as Unison's standing to seek the same relief concerning the 2011 sale order.

the applicable Bankruptcy Rules. The parties to the contracts that resulted from those orders have remedies under state law and will be left to those remedies. The motion of T6 Unison Site Management, LLC and Unison Site Management II, LLC to vacate the May 13, 2011 sale order is accordingly denied. The motion of Aleph Point, LLC to vacate the July 23, 2010 sale order is also denied. A separate order will be entered consistent with this opinion.

Dated: February 1, 2012

_____
A. Benjamin Goldgar
United States Bankruptcy Judge